MORIAL, Judge.
This is a medical malpractice action by Leonard Adams against defendants Dr. Harry B. Caplan and The Eye, Ear, Nose and Throat Hospital (EENT). Following a cataract operation, plaintiff developed an infection in his left eye which necessitated the surgical removal of the eye. Plaintiff alleged that the infection was due to the negligence of Dr. Caplan, the ophthalmologist who performed the surgery and the EENT staff because the organism citrobac-ter diversus became implanted in his eye while it was under the total control of the defendants.
The. trial judge dismissed plaintiff’s suit, apparently concluding that plaintiff had failed to prove that the treatment administered to him by defendants fell below the standard of care customarily used by members of the medical profession in good standing in the same community or locality. We affirm.
Plaintiff first saw Dr. Caplan on August 31, 1972 complaining of loss of vision in his left eye. Upon examination the doctor found a mature cataract in plaintiff’s eye and recommended surgical removal of the cataract. The doctor sent plaintiff to EENT for a smear culture on both eyes as well as to have a blood sugar taken, a hematology and a urinalysis. Plaintiff was told to see his family doctor for a physical to determine if he was in a condition to withstand surgery.
Caplan also prescribed Chloromycetin, an antibiotic ointment which he was immediately to begin applying every night in preparation for surgery on September 11, 1972. *329 Plaintiff returned to the doctor on September 8 and found that all of his test results were normal and that his family physician had approved the surgery. The eye culture taken showed no evidence of any organism present in the left eye. Plaintiff was admitted to the hospital on September 10, 1972. Caplan had instructed the staff to administer certain antibiotics to ward off infection as well as other drugs used in preparing the eye for surgery. Hospital records reflect that these instructions were followed by the staff. The doctor described the surgical method employed as that customarily used in a cataract operation and termed it successful and uneventful. He testified that the usual sterile techniques were followed and that sterilized instruments were used. Following the completion of the surgery, an antibiotic ointment was liberally applied to the eye and it was bandaged and covered by a plastic shield. The nurses who treated plaintiff testified that all of the doctor’s instructions were followed and sterile techniques were employed at all times. Plaintiff’s recovery proceeded without incident from September 11 through September 13 with the doctor or hospital staff periodically changing the dressing and applying antibiotics. The dressings and bandages were pre-sterilized and kept unopened until application in Dr. Caplan’s personal tray. On the 11th and 12th of September plaintiff used a bed pan and urinal with his wife’s assistance. On the 13th he used a commode next to his bed to go to the bathroom. His eye was to remain bandaged at all times unless a member of the staff was changing it or administering medication.
On the morning of September 14th upon removing the bandage, Dr. Caplan discovered the eye had become infected and immediately ordered an increase in medication including garamycin, Chloromycetin and cholomycin. An eye culture and sensitivity test were taken and the tests showed the organism was sensitive to several of the antibiotics administered. The treatment was continued from the 14th through the 19th of September; however, by the 19th the infection became so severe the doctor feared that it would spread to the brain and concluded that the evisceration of the eye was necessary. The surgery was performed on September 20 and plaintiff was released on the 24th having made an uneventful recovery.
The infecting organism identified as ci-trobacter diversus, is commonly located in the large intestines of warm blooded animals and rarely causes disease. There are no reported cases of it causing infection in the human eye. Neither Dr. Robert Azar, called as an expert witness nor Dr. Caplan were familiar with the organism. The other experts testified that they had dealt with it very rarely. None of the doctors could state specifically how the organism entered plaintiff’s eye.
The general malpractice law was set out in the case of Meyer v. St. Paul-Mercury Indemnity Company, 225 La. 618, 73 So.2d 781 (1953) as follows:
“A physician, surgeon or dentist, according to the jurisprudence of this court and of the Louisiana Courts of Appeal, is not required to exercise the highest degree of skill and care possible. As a general rule, it is his duty to exercise the degree of skill ordinarily employed, under similar circumstances, by the members of his profession in good standing in the same community or locality, and to use reasonable care and diligence, along with his best judgment, in the application of his skill to the case.”
Dr. Robert Azar was qualified as an expert in the field of ophthalmology. Upon receiving a description of the pre-operative care given by the doctor, including the smear cultures of both eyes, and the prescription of daily application of antibiotics during the pre-hospitalization period, Dr. Azar was of the opinion that Dr. Caplan’s care exceeded that customarily employed by a competent specialist in his field in this community and in other areas of the country. He stated that the pre-operative orders issued were proper and the surgical technique was correct and in accord with community standards. He testified that *330 the postoperative care and treatment were also in accord with community standards. He stated that postoperative infection did not necessarily indicate negligence on the part of a surgeon or hospital personnel. He explained that a certain percentage of patients will develop an infection no matter how meticulous and cautious a surgeon may be. Prior to this case, Dr. Azar had not heard of the organism citrobacter diversus. He could not explain how the infection had entered plaintiff’s eye.
Dr. George Hauser, the head pathologist at the EENT Hospital was also called as an expert witness. He had never dealt with a case of citrobacter diversus infecting the eye. He explained that the organism is generally found in the large intestines, but is also found in the sputum, nasal passages, throat, urine and wounds about the body. He stated that the bacteria could be transported from the colon to other body areas by direct contact to the eye or through the blood stream. He testified that it was commonly transported by direct transmission when the patient or other party touches the area after using the bathroom and does not wash his hands. However, he also explained how the bacteria could be transported to the eye from within the body when the areas adjacent to the eye, such as the sinuses or nasal passages are infected. He stated that the organism could work its way through a duct leading from the nose to the eye. He was of the opinion that where an antibiotic ointment had been liberally applied to the front of the eye, it would be unlikely for the organism to enter through the front of the eye.
He further testified that the hospital had set out plates containing media in which bacteria grows to determine if the organism was present in the hospital environment. There was no evidence of the organism found in the hospital and there were no reports of any of the other patients developing a similar infection.
Dr. William Mogabgab, a specialist in infectious diseases had never seen a case of a citrobacter diversus infection in an eye in his thirty years of practice. He stated that the organism is usually found in the gastrointestinal contents of humans and animals. He said he could not expect the organism to be transmitted through the blood stream without a patient exhibiting symptoms of high fever and loss of appetite. He stated that the organism could be transported by direct contact or by air. He knew of cases where citrobacter diversus had caused infections in the urinary tract, the sinus, lungs and sputum. He believed that there is a greater probability of the organism being spread by direct contact than through airborne means. He could not state how the organism had been introduced into plaintiff’s eye.
In reviewing the record we find no evidence to contradict the trial court’s conclusion that the defendants exercised the ordinary degree of care employed by members of the medical profession in good standing in this community in their care and treatment of plaintiff. In fact, the expert testimony was to the effect that Dr. Caplan exceeded the degree of care ordinarily used by doctors in this area. The expert testimony was that infection is a postoperative risk in all cases and does not necessarily raise an inference of negligence. We find plaintiff failed to meet his burden of proof. Thibodeaux v. Aetna Casualty and Surety Company, 216 So.2d 314 (La.App. 3 Cir. 1965).
The doctrine of “res ipsa loquitar” is inapplicable. This doctrine comes into play in a case where circumstantial evidence is presented and negligence is inferred on the part of a defendant because the facts indicate this to be the most probable cause of the injury in the absence of other plausible explanations by witnesses found credible. Boudreaux v. American Insurance Co., 262 La. 721, 264 So.2d 621 (1972).
The testimony suggests many possibilities as to the cause of plaintiff’s infection. We are dealing with a rare medical occurrence in this case and understandably so, we were not given any definitive medical explanation as to the cause. We find it significant that none of the other patients *331 in the hospital during this period developed this infection. It suggests that the organism may have been indigenous to the patient infected. We feel it was equally as possible for the plaintiff to have carried the infection' in an area adjacent to the eye or to have touched the area around his eye as it is possible for the infection to have been caused by the negligence of the doctor or staff. We do not find that plaintiff successfully raised an inference of negligence.
For the foregoing reasons, the judgment of the trial court is affirmed.

AFFIRMED.